**Preliminary Expert Report - James Hugh Potts, II Esq.**
**Dated 19 September 2014**
**Re: *Wilder v Rockdale County et al***
Civil Action File No. 1:13-CV-2715 RWS


John M. Robertson, MD, MPH, FACP
11024 Montgomery, NE # 355
Albuquerque, NM 87111-3962

James Hugh Potts II, Esq.
1348 Ponce de Leon Ave
Atlanta, GA 30306
September 19, 2014

## By PDF format – E-mail attachment


Dear Mr. Potts,

This preliminary report is written to comply with Rule 26 of the Federal Rules of Civil Procedure Governing Disclosure prior to completion of discovery as it relates to the case of:

*Wilder v. Rockdale County et al.*
Civil Action File No. 1:13-CV-2715 RWS
In The United States District Court
for The Northern District of Georgia
Atlanta Division

In my capacity as a medical and correctional health care expert, I am attaching the following documentation to this letter:

1. Qualifications (up-to date *Curriculum Vitae*);
2. List of publications (contained in the *Curriculum Vitae*);
3. Listing of all cases in which I have been deposed or testified in court; and
4. Fee schedule for expert work applicable to this case

Listed below are the case materials reviewed on which I base my expert opinions and the conclusions I have drawn and will testify to if required.

Materials reviewed on which my preliminary opinions are based are as follows:

1. All pleadings, including Complaints, Answers, Discovery, Discovery Responses, Disclosures, Depositions, Exhibits, and other Documents Produced as of this writing;
2. All preliminary Discovery regarding decedent's incarceration in September 2012 until his in-custody death in September 2012;
3. Georgia Bureau of Investigation (GBI) File, including the Investigation Report and Autopsy regarding Albert Wilder;
4. Albert Wilder's Autopsy Report, Findings and Toxicology Report – Georgia Office of the Medical Examiner # 2012-1020601, dated 30 November 2012;
5. Albert Wilder's Medical records;

   Depositions and Exhibits completed to date, including the following:
6. Deposition of Anne Marie Pierre, LPN;
7. Deposition of Helen Green, LPN;
8. Deposition of Phillip Nowlin, MD;
9. Deposition of Hazel Garth;
10. Deposition of Tiffany Hart;
11. Deposition of Stephanie Nunez;
12. Deposition of Eric Levitt;
13. Deposition of Jeff Wigington;
14. Deposition of Louise Jones;
15. Deposition of Renee Wilder

The following summarizes my preliminary opinions prior to the completion of discovery related to key points in Plaintiff's Complaint:

### A. *The Decedent received grossly inadequate medical care and failed to receive even the most rudimentary evaluation and treatment while incarcerated at the Rockdale County Jail.*

The medical and nursing care and treatment purportedly provided to Mr. Wilder while he was imprisoned at the Rockdale County Jail in September 2012 fell well below the standard of care and Defendants failed to comply with even the most rudimentary expectations for a prisoner and patient in Albert Wilder's condition. Health care delivery was neither consistent with correctional (*i.e.,* jail) or community medical

standards of care and fell well below the Standard of Care.  In addition, it was in clear violation of *Georgia Statues* as they pertain to the duties of Licensed Practical Nurses (LPNs) and  Sheriffs as set out in *O.C.G.A.§ 42-4-4 (2010)* and *O.C.G.A. § 43-26-32 (2010)* respectively.

OCGA 42-4-4. Duties of sheriff as to jail inmates; designation of inmate as trustee; failure to comply with Code section provides in pertinent part as follows:

> (a) It shall be the duty of the sheriff:
>
> (2) To furnish persons confined in the jail with medical aid, heat, and blankets, to be reimbursed if necessary from the county treasury, for neglect of which he shall be liable to suffer the penalty prescribed in this Code section; provided, however, that, with respect to an inmate covered under Article 3 of this chapter, the officer in charge will provide such person access to medical aid and may arrange for the person's health insurance carrier to pay the health care provider for the aid rendered; and . . .
>
> (c) Any sheriff or deputy who fails to comply with this Code section shall be fined for contempt, as is the clerk of the superior court in similar cases. The sheriff or deputy shall also be subject to removal from office as prescribed in Code Section 15-6-82.

OCGA 43-26-32 (7) Licensed Practical Nurses provides as follows:

> "The practice of licensed practical nursing" means the provision of care for compensation, under the supervision of a physician practicing medicine, a dentist practicing dentistry, a podiatrist practicing podiatry, or a registered nurse practicing nursing in accordance with applicable provisions of law. Such care shall relate to the maintenance of health and prevention of illness through acts authorized by the board, which shall include, but not be limited to, the following:

(A) Participating in the assessment, planning, implementation, and evaluation of the delivery of health care services and other specialized tasks when appropriately trained and consistent with board rules and regulations;

(B) Providing direct personal patient observation, care, and assistance in hospitals, clinics, nursing homes, or emergency treatment facilities, or other health care facilities in areas of practice including, but not limited to: coronary care, intensive care, emergency treatment, surgical care and recovery, obstetrics, pediatrics, outpatient services, home health care, or other such areas of practice;

(C) Performing comfort and safety measures;

(D) Administering treatments and medication; and

(E) Participating in the management and supervision of unlicensed personnel in the delivery of patient care.

**B. *Anne Marie Pierre, LPN; Helen Green, LPN; Phillip Nowlin, MD; Hazel Garth; Tiffany Hart; Stephanie Nunez; Jeff Wigington; Louise Jones; and their superiors and subordinates in their respective capacities as medical and nursing personnel as well as the Sheriff, jailers and supervisors, had a responsibility to assure access to appropriate health, medical and nursing care for Mr. Wilder during his incarceration.***

Based upon the aforementioned records reviewed, the Defendants' care not only fell well below the applicable Standard of Care, it equally failed to follow even the most basic standards of care and treatment and to transfer the decedent to an appropriate medical facility for evaluation, treatment and care. Defendants observed Albert Wilder through a declining clinical state of abdominal pain, vomiting of bloody material and suffering up to and including his death. Many decisions concerning decedent's condition, care, and treatment were made by unsupervised, untrained and unlicensed employees.

The Rockdale County Jail and *CorrectHealth* (CH) policies state under "Diagnostic Services (CSO-D-04.3) that "*POLICY:*  CH will procure the services of professional vendors to provide on-site diagnostic services.  The vendors will be appropriately licensed, registered, certified, accredited, or otherwise meet applicable state and federal laws, rules and regulations."

This policy statement does not absolve the Sheriff and jail personnel acting on behalf of the County in their official capacities of responsibility for the health and welfare of the Detention Center's detainees. The Defendants' depositions, acknowledge that Mr. Wilder received woefully inadequate evaluation, assessment and treatment prior to his death. Obtaining an appropriate medical evaluation, assessment and care would have placed no specific hardship on the Jail given that Rockdale Medical Center staffed by physicians and health personnel was nearby and less than 4 miles away and was the Jail's preferred source for urgent off-site medical care.

**C. *Documentation of multiple observations (from logs) of the descendent describes an objective serious and deteriorating medical condition that should have been obvious to even an untrained lay person.***

These documented observations include: prolonged periods of crying out in profound abdominal pain, nausea, production of bloody vomitus, followed by unresponsiveness, and continued cries of pronounced abdominal pain, withdrawal from any meaningful interaction, well documented in the above "Materials reviewed" including Jail records and logs, deposition transcripts, interviews, disclosures, the GBI file, etc. Equally of note the decedent was on a *"30 minute watch"* in a medical holding cell in the medical unit signifying that it was recognized that he was at serious "risk", and in spite of this no medical evaluation was sought as his clinical state continued to rapidly decline.

Particularly compelling is the documentation (Booking Unit Control Log) by the Day Shift Correctional Officer that Mr. Wilder was noted to be in a clearly declining state that was evident to a layperson.   No change in this situation was noted on subsequent "checks" by correctional staff.

These observations  mandated immediate emergency calls to "911" for transfer and medical evaluation to a tertiary care medical facility.

This tragic sequence of events speaks to the inability of unsupervised, undertrained and lesser-credentialed health personnel to discern life-threatening medical conditions. Furthermore, by their own admissions in depositions they were not capable of providing the necessary level of assessment, care or treatment. In spite of Mr. Wilder's clinical deterioration, up until his death in September 2012, <u>no medical care was rendered or sought</u> in spite of his obvious serious medical needs and condition.

***D. Basic to the correctional environment are standard operating procedures to ensure access to appropriate medical care. This well-established and "basic" component of operations known to all administrative correctional staff (Founded on American Correctional Association (ACA) and National Committee on Correctional Health Care (NCCHC) standards was not adhered to in the case of Mr. Wilder. Given the documentation reviewed it is evident that:***

***1. Administrative, medical and nursing staff had to be aware of the gravity of Albert Wilder's medical circumstances (at a lay-person's level) and***

***2. Administrative, medical and nursing staff deliberately ignored Albert Wilder's condition in their failure to seek emergency medical attention.***

In my medical and administrative opinion, the administrative, medical and nursing staff at the Rockdale County Jail failed to act in good faith and discharge their duties in a timely manner and with due care and diligence. They failed to exercise a basic level of individual and collective "lay-judgment" by keeping Mr. Wilder on site and observing and documenting his medical decline.

Jail Administrators and medical and nursing staff and their subordinates were aware of the seriousness of Mr. Wilder's medical condition. Deputy Garth contemplated calling 911 but understood from her security training that jail policy did not allow her to do so if health care staff was present. She noted his screams of pain from 10:30 that morning until 2:55 that afternoon when she completed her shift. Deputy Hart observed Mr. Wilder at 3:05 p.m. laying in the fetal position holding his abdomen and saying he was in pain. Hart notified the LPN of his serious medical need, but was told that she was "too busy to attend to him. Hart further heard him screaming in pain when she observed him at 3:33, 3:55, 4:15, 4:20, 5:00, 5:14, 5:50 and 6:34 p.m.

At 6:55 p.m., Hart noticed vomit by Mr. Wilder's bed and on his mattress. It was described as "red like ketchup". She heard him yell, "help me, they are killing me." Hart informed LPN Pierre at that time he was getting worse. No assessment of his condition was rendered by the medical staff and neither the LPN nor the jail physician evaluated him.

At 7:50 p.m. Hart noted Mr. Wider yelling, "I'm in pain, and they are killing me." When at 9:10 p.m. Hart took a break, he was crying out so loud that he could be heard over the entire medical unit. During her break Hart informed her supervisor of her layperson's opinion that his medical condition was deteriorating. She observed him again at 9:50 p.m. and at 10:00 p.m., each time noting that he was crying in pain.

She gave report to Deputy Nunez, informing her of concerns regarding Mr. Wilder's medical condition. Nunez observed the decedent's cell 2 times according to Captain Munford based on his video review (the latest at 1:21 a.m.)

Nunez asked LPN Green about Mr. Wilder and she is reported to have stated that she "knew nothing about him." Moreover, she was unable to locate his medical records until after his death.

Approximately three hours passed during which time no further checks by security or medical staff were recorded. The next check at 4:30 a.m. was to discover that he was dead.

Equally compelling are the log and Jail records and memos that explicitly acknowledge the gravity of the Mr. Wilder's medical condition. Deputy

Garth noted in her deposition that she had informed her supervisor that the decedent was…"very ill" and required medical attention.

Regardless of formal medical or nursing training it is reasonable to hold that even a lay person would recognize a need for medical assessment in an individual with the extensive problems Mr. Wilder was observed to have, complaining of intense abdominal pain, vomiting bloody appearing material, demonstrating an inability to eat, interact with health or security personnel.   Given the overwhelming picture, failure to assure the decedent's safety with a necessary medical assessment and ultimately emergency medical care constitutes a deliberate indifference to Albert Wilder's medical needs and resulted in his clinical outcome, a preventable death.

**E. Based upon the autopsy finding and what is documented about Albert Wilder's condition preceding his death, this 51 year old man experienced, more likely than not, a medically "preventable death" due to failure to seek appropriate medical intervention in spite of serious on-going medical signs and symptoms that should have been obvious even to an untrained lay person.**

In my medical opinion this represents a "preventable death" based upon documentation that lacks any contributing prior existing medical conditions that might have contributed to his death from a perforated duodenal ulcer.   No documented "co-morbid" conditions existed that explain his death including: hereditary factors, cancer, major trauma, recent surgery, etc.   In essence Albert Wilder died due to a profound failure to seek medical assessment while he was clinically deteriorating, due to a perforated duodenal ulcer. Earlier transfer in his debilitated state to an appropriate medical facility would have more likely than not resulted in the necessary interventions and his survival.

**F. Specific Rockdale County Jail and CorrectHealth policies (i.e., the County systemic organization structure) that were associated with the cause the death of Albert Wilder include the following:**

1.     Failure to provide basic standard medical and nursing care.

2.     Abiding by Policies designed to save money (the Contract provides that Rockdale County is responsible for emergency medical care). By limiting contact by inmates with physicians, and creating a culture that failed to provide the necessary autonomy for Rockdale County sheriff's deputies and jailors to call 911 in an emergency. This conclusion is drawn from deposition testimony that correctional staff was "unaware" that they had the "authority" to call 911, Deputy Garth considered calling 911, but did not feel empowered to do so. Likewise, Deputy Hart felt that Mr. Wilder required assessment by a physician but understood that when the LPN would not see him or seek a physician's opinion she had to contact a supervisor, who also failed to support a necessary intervention. While Sheriff Wigington and others testified that jailors had every right to call 911 if they perceived what they considered to be a medical emergency, it is clear that that level of authority was not understood by numerous members of the correctional staff.

3.     Defendants, including Wigington and Rockdale County along with *CorrectHealth* implemented a policy that falls well below the standard in the following respects:

     a.  Inadequate Staffing; adequately staff for the jail (***both number of staff and level of training and credentials***) as evidenced by a single unsupervised LPN in charge of the entire medical unit and care for the balance of the prisoners at the Rockdale County Jail with no Registered Nurse or physician present and only intermittent and sporadic physician on-site coverage and evaluation.

     b.  Inadequate Supervision; Inadequate and improper supervision of LPN's by a registered nurse or doctor;

     c.  Failure to provide timely access to medical care for inmates;

     d.  LPN's with insufficient training and supervision to make the determination of whether an inmate requires evaluation by a

physician or emergent transport to an Emergency Medical Department;

e. Inadequate and often (Complete lack) of coverage in the medical unit while the LPN conducts "pill call" or is otherwise occupied with a duty that requires the LPN's attention outside the medical unit.

f. No formal quality assurance program;

g. Inaccurate, Disorganized, Incomplete medical records; and

h. No readily accessible physician to treat seriously ill inmates with serious medical needs;

4. This systematic substandard care manifested itself through inadequate initial screening of inmates  inadequate record keeping, inadequate staffing of medical personnel, and a policy of failing to provide even the most rudimentary training of nurses and jailors in how to recognize and address serious medical needs and medical emergencies like the one presented with in this case.

Defendants including Rockdale County CorrectHealth and Sheriff Wigington specifically failed to properly train nurses, deputies and jailors regarding how to observe, recognize (**at a lay level**) potentially urgent inmate medical needs; in what and when to report to medical; in what to do when the LPN solely in charge does not respond when there is a seriously ill inmate who needs medical evaluation. Defendant Wigington, and Rockdale County did not train his deputies how to react and handle situations when an inmate needs to be evaluated by either on-site health care personnel or requires off site transport by activating the 911 emergency response system.

Entering into contracts for medical care whereby the health care subcontractor were not required to train correctional officers in dealing with emergencies. (*A commonly recognized industry standard*).

5.  Failure to have the necessary oversight to see if the promised services are delivered, e.g. CorrectHealth provided cheaper LPN's to staff, jail to enhance their profit.

6.  The need to afford better and different training to the nursing and corrections staff is obvious and is manifest by their <u>explicit lack of knowledge of their own policies and procedures</u> (*e.g.* Rockdale Co.) as they relate to the frequency of checking on inmates and what the correctional officer is supposed to do during that check. For example, Nunez, not only had no medical training besides CPR, she also not properly trained in how to perform her job when she was rotated into the medical unit. Nunez did <u>not</u> know that: a. Inmates under medical observations such as Albert Wilder "shall receive in-person surveillance" and b. that in-person surveillance was "every 30 minutes."   Contrary to the Rockdale Co. Correctional Center, Nunez's interpretation of "in-person surveillance" meant that she could merely peek, through a glass door and glass window, thereby observing the decedent's feet, but not any other part of his body.  Despite the lack of training being so obvious the county and the Sheriff did nothing to correct it.

7.  This failure to train and document understanding and implementation of a policy to prevent necessary harm, constituted a systematic failure and a deliberate indifference to the safety and welfare of medically vulnerable inmates such as Albert Wilder.

community levels of health care as they relate to the care of incarcerated persons.

If called as a witness in this case, I could competently testify to the medical opinions outlined herein.

No expert opinion rendered by me has ever been disqualified by any court.

Sincerely,

John M. Robertson, MD, MPH, FACP

Attachments:

Curriculum Vitae dated September 2014
Listing of legal testimony and depositions
Summary of Fee Schedule

# John M. Robertson, MD, MPH, FACP, FRACP

## Immediate Past Professional Positions & Contact Address:

| | |
|---|---|
| April 2013 – March 2014 | Consultant Physician & Geriatrician – Medicine Unit<br>North Adelaide Local Health Network<br>Modbury Hospital, Teaching Affiliate – University of Adelaide<br>Modbury, SA 5092   AUSTRALIA |
| Prior Position:<br>2012 – 2013 | Consultant Physician & Geriatrician – Goulburn Valley Health<br>Clinical Associate Professor of Medicine – University of Melbourne<br>Shepparton VIC 3630  AUSTRALIA |
| Contact Information : | 11024 Montgomery NE # 355<br>Albuquerque, NM 87111<br>Telephone  Home: 505-858-1674 / Mobile: 505-301-0497<br>E-mail:   *robert_brucex@hotmail.com* |

## Education & Training

| | |
|---|---|
| 2004 – 06 | Fellowship in Geriatric Medicine, Department of Medicine<br>University of New Mexico Albuquerque, NM |
| 1991 – 93 | Fellowship in Preventive Medicine, Department of Social Medicine<br>University of North Carolina at Chapel Hill, Chapel Hill, NC |
| 1993 | M.P.H., Health Policy & Administration<br>University of North Carolina at Chapel Hill, Chapel Hill, NC |
| 1983 – 86 | Internship & Residency, Department of Internal Medicine<br>University of Minnesota Hospitals & Clinics, Minneapolis, MN |
| 1983 | M.D., Medical College of Georgia Augusta, GA |
| 1976 | B.M.Sc., & Physician's Associate Degree, Emory University Atlanta, GA |
| 1971 – 74 | McGill University, Montreal, PQ Canada (East Asian Studies Major) |

## Certification & Credentials / Australia - United States

### Australia

2013    Medical Specialist Recognition Medicine & Geriatrics
        Fellowship RACP # 13562

### United States

2007    Subspecialty Board Certification in Geriatrics (ABIM Renewal-2017)
1994    American Board of Preventive Medicine (Board Qualified)
1986    Diplomate, American Board of Internal Medicine (Board-Certified)
1984    Diplomate, National Board of Medical Examiners

## Active Medical Licensure

Alaska            4743
North Carolina    34142
New Mexico        94-375

## Active DEA Licensure-United States

Unrestricted DEA licensure – BR0459481 (*Expires 30 April 2017*)

## Administrative, Public Health & Consultant Activities

2008 – 2011    Physician Administrator – Office of Facilities Management
               New Mexico Department of Health - Santa Fe & Albuquerque, NM

2007 – 2011    Medical monitor for Contractual Health Services
               Metropolitan Detention Center, Albuquerque, NM

2004 – 2006    Court-Approved Medical Monitor, Alabama State Court
               Case of *Baker v. Campbell* St. Clair Facility, Springville, AL

2003 – 2004    Health Services Administrator, State of Alaska Department of Corrections
               Anchorage, AK

2001 – 2004    Medical Director, State of Alaska Department of Corrections, Anchorage, AK

1994 – 2001    Medical Director, New Mexico Corrections Department, Santa Fe, NM

1993 – 94    Medical, Training & Policy Consultant, North Carolina Dept. of Health
Area Health Education Centers Chapel Hill, NC

1993    Medical and Policy Consultant, Tuberculosis Control Program
City of Philadelphia Department of Public Health, Philadelphia, PA

### Academic, Clinical & Staff Appointments

*Royal Melbourne Hospital Melbourne, Victoria, Australia*

2012 – 13    Consultant in Medicine (Hon.)

*University of Melbourne School of Medicine, Victoria, Australia*

2012 – 13    Clinical Associate Professor of Medicine

*New Mexico Department of Health – Office of Facilities Management*

2009 – 11    Medical Staff privileges – Veterans Center Truth or Consequences, NM
Medical Staff privileges – Turquoise Lodge Hospital Albuquerque, NM

*Alaska Regional Medical Center, Anchorage, AK*

2002 – 2004    Medical Staff privileges

*University of New Mexico School of Medicine, Albuquerque, NM*

2006 – 2012    Clinical Associate Professor of Medicine, Division of Geriatric Medicine
1998 – 2004    Clinical Associate Professor of Medicine, Epidemiology & Preventive Medicine

1996 – 2004    Clinical Associate Professor of Medicine, Division of Geriatric Medicine

*University of North Carolina School of Medicine, Chapel Hill, NC*

1991 – 94    Assistant Clinical Professor of Medicine
1991 – 94    University of North Carolina Hospitals & Clinics

### *Case Western Reserve University School of Medicine, Cleveland, OH*

| | |
|---|---|
| 1988 – 91 | Assistant Professor of Medicine |
| 1987 – 88 | Senior Instructor of Medicine |
| 1986 – 87 | Clinical Instructor in Medicine |

### *Case Western Reserve University School of Medicine, Cleveland, OH*

| | |
|---|---|
| 1987 – 91 | University Hospitals of Cleveland, Cleveland, OH |
| 1987 – 91 | Cleveland Metropolitan General Hospital, Cleveland, OH |
| 1986 – 88 | Mount Sinai Medical Center, Cleveland, OH |

## Membership in Societies & Organizations

American College of Physicians

American Society of Tropical Medicine & Hygiene

## Miscellaneous Professional Activities

| | |
|---|---|
| 1998 – 2004 | Board Member, National Commission on Correctional Healthcare, (NCCHC) Chicago, IL   Official liaison representative for: American College of Physicians |
| 1998 – 2001 | Medical expert panel member, New Mexico Medical Review Commission |
| 1996 – 2000 | Board Member, Health Resources, Inc. of New Mexico |
| 1994 – 99 | Governor's HIV Task Force / TB Task Force, New Mexico |

## Honors & Awards

| | |
|---|---|
| 2001 | US Public Health Service - Excellence in Leadership Award, for "Work in improving healthcare in corrections and the community in New Mexico" |
| 1997 | Fellowship (FACP): American College of Physicians, Philadelphia, PA |
| 1993 | Trainee Investigator Award for, "Excellence in Scientific Research" American Society for Clinical Investigation, Washington, DC |

## Publications

1.      Position Statement: "Correctional Health Care" Coauthor of official policy: American College of Physicians – American Society of Internal Medicine *Internal Publication: ACP-ASIM {December 2001}*

2.      "The Disease Profile of Texas Inmates" {Invited Editorial Commentary} *Annals of Epidemiology* 2000, 10; 71-73.

3.      Robertson JM, Burtt DS, Edmonds KL, Molina P, Kiefe KI and Ellner JJ. "Delayed Tuberculin Reactivity in Persons of Indochinese Origin: Implications for Preventive Therapy." *Annals of Internal Medicine* 1996; 124: 9, 779-784.

4.      "Tuberculin Positivity in Vietnamese Immigrants": Abstract and Commentary *Citation and Commentary on Publication # 2: Infectious Disease Alert* 1996, 15:19; 147-148.

5.      Herman CJ and Robertson JM. <u>Health Promotion and Screening for Successful Aging</u> *Geriatrics Review Syllabus.* 1993-94. American Geriatrics Society, New York, NY.

6.      Malaria in Montagnard Refugees: North Carolina 1992 *MMWR*: 1993; 42:10; 180-183.

7.      Herman CJ and Robertson JM. <u>Issues in Preventive Geriatrics</u> *Geriatrics Review Syllabus III.* 1996. American Geriatrics Society, New York, NY.

### Books

8.      <u>"Clinical Practice in Correctional Medicine"</u> Chapter author, Mosby, Chicago, IL. 1998

9.      Currently contracted for Question writing for: Study Guide for <u>"Bates Guide to Physical Examination – 11[th] Ed."</u> Lippincott, Williams & Wilkins Anticipated: *In Press early 2015*

*References / Referees on request*

*September, 2014*

# John M. Robertson, MD, MPH, FACP
*Listing of legal cases as a named expert witness*

**1999**       <u>**Medical expert to: The Law Firm of Donna Brorby, San Francisco, CA**</u>

No. 99-20228
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
DAVID R. RUIZ, et al.,
Plaintiffs-Appellees- Cross-Appellants-Appellees
v.
UNITED STATES OF AMERICA,
Intervenor-Plaintiff-Appellee-Cross-Appellant
v.
GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION; et al.,
Defendants-Appellants- Cross-Appellees
REPRESENTATIVE JOHN CULBERSON; SENATOR J.E. "BUSTER" BROWN,
Intervenor-Defendants- Appellants-Cross-Appellees
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BRIEF FOR THE UNITED STATES AS
INTERVENOR-PLAINTIFF-APPELLEE-CROSS-APPELLANT

**2000**       <u>**Medical Consultant to Kennedy, Moulton & Wells P.C. (Albuquerque, NM)**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
                              CV-99-665 MV/RLP

TONY OTERO, As personal
Representative of the Estate of
JERRY ROMERO, deceased,
        Plaintiff,
vs.

RONALD L. LYTLE, Warden, Southern New Mexico Correctional Facility; LUPE MARSHALL,
Assistant Warden, Southern New Mexico Correctional Facility; ARTHUR CULPEPPER, Medical
Director, Southern New Mexico Correctional Facility; DR.  DHILLON, an employee/agent of Southern
New Mexico Correctional Facility; JANE DOES 1 THROUGH 10, Medical Staff at Southern New Mexico
Correctional Facility; and JOHN DOES 1 THROUGH 10, Medical Staff at Southern New Mexico
Correctional Facility, Defendants.

**Case settled out-of-court**

**Page 2/5**
**Expert Witness Disclosure – June 2104**
**John M. Robertson, MD, MPH, FACP**

**2004**     **Medical Consultant to Yenson, Lynn, Allen & Wosick P.C. (Albuquerque, NM)**

ESTATE OF ALPHONSO P GONZALES; DENISE GONZALES, individually and in her capacity as personal representative of the ESTATE OF ALPHONSO P GONZALES and also as mother and best friend of TIMOTHY, AURYANA, CASSANDRA, and SYREENA GONZALES (minor children of ALPHONSO P GONZALES, deceased and DENISE GONZALES), Plaintiffs, vs. DON BURDINE, both individually and in his capacity as director of the ROOSEVELT COUNTY DETENTION CENTER; VICTOR D. RAMSEY, both individually and in his official capacity as a supervisor of the ROOSEVELT COUNTY DETENTION CENTER; C.D. NEWBERRY, JR., both individually and in his official capacity as SHERIFF of the COUNTY OF ROOSEVELT; STEVEN L. MULKEY, both individually as in his official capacity as a policeman for the NEW MEXICO STATE POLICE; the COUNTY OF ROOSEVELT, ROOSEVELT COUNTY DETENTION CENTER; and CONSTANCE C. BELCHER, both individually and her capacity as the medical provider for the RCDC, Defendants; Cause No. CIV-2003-01287JP/RHS.

**Case settled out-of-court**

**2005**     **Medical Consultant to the Law Firm of Butt, Thornton & Baehr, PC (Albuquerque, NM)**

2nd JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO
CV-2003-07296

Bowen v. ARV Assisted Living

**2006**     **Medical Consultant to The Baker Law Firm (Albuquerque, NM)**

2nd JUDICIAL COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO
CV-2005-07296

Rosita Black, As personal
Representative of the Estate of
Andy Endito, deceased,
        Plaintiff,
vs.
Ramah Care Services, Inc.

**Case settled out-of-court**

**Page 3/5**
**Expert Witness Disclosure – June 2104**
**John M. Robertson, MD, MPH, FACP**

**2006**            <u>**State of Alaska, Office of the Attorney General, Division of Risk Management**</u>

SUPERIOR COURT FOR THE STATE OF ALASKA
4th JUDICIAL CIRCUIT
STATE OF ALASKA
4FA-03-1617  CIV

Hymes (Plaintiffs) v. Leonie Deramus, M.D. & Michael James Pomeroy (Defendants)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
STATE OF ALASKA
3AN 05-12341 CI

Myer v. State of Alaska, Department of Corrections

**Case under appeal 2013**

**2007**            <u>**Medical Consultant to the Law Firm of Butt, Thornton & Baehr, PC (Albuquerque, NM)**</u>

STATE OF NEW MEXICO
COUNTY OF CURRY
NINTH JUDICIAL DISTRICT COURT

PABLA E. LOPEZ, by her next friend
and attorney in fact, MARGARITA LOPEZ
and ALBERTO LOPEZ,

                                     Plaintiffs,
                                     D-0905-CV-2005-00412
                                     Honorable Stephen K.
Quinn,                                                              District Judge

vs.

LAUREL HEALTHCARE OF CLOVIS, LLC,
Doing business as Laurel Plains Healthcare,

                                     Defendant.

**Case settled out-of-court**

**Page 4/5**
**Expert Witness Disclosure – June 2104**
**John M. Robertson, MD, MPH, FACP**

**2007**          <u>Court Authorized Medical Expert in the case of</u>:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

BALJIT KAUR et al.,

                              Plaintiffs,
                   v.

ED ALEAMEIDA, et al.,

                              Defendants

NO. CV F-05-276 OWW DLB

**Case settled out-of-court**

**2007**          <u>Medical Consultant to the Law Firm of James H. Potts, Esq. (Atlanta, GA)</u>

STATE OF GEORGIA
COUNTY OF ELBERT

Glenn Cruickshank and Robin Cruickshank,

                              Plaintiffs,

Civil Action File No.  3:06-CV-00101-CDL

                              v.

Elbert Co. et al.,
                              Defendants.

**Case settled out-of-court**

**Page 5/5**
**Expert Witness Disclosure – June 2104**
**John M. Robertson, MD, MPH, FACP**

**2009**          <u>Medical Consultant to the Law Office of Robert Perry, Esq. (Albuquerque, NM)</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Kaiser v. Candelaria et al.

No. 1:09-CV-00126-RB/LFG

**Filed, case currently awaiting further hearing**

**2010**          <u>Medical Consultant to The Baker Law Firm (Albuquerque, NM)</u>

*IN THE UNITED STATES DISTRICT COURT DISTRICT OF NEW MEXICO*
*KATHERINE ROWE, Individually and as Personal Representative of the Estate of*
*Jervis C. Rowe, deceased, Plaintiff,*
*v.*
*USDC - No. CIV 09-777*
*[Jury Requested] RED ROCKS NURSING OPERATIONS, LLC,*
*a Delaware for profit corporation,  Defendant.*

**Filed, case currently awaiting depositions and further hearing**

**2010**          <u>Medical Consultant to the Law Firm of Butt, Thornton & Baehr, PC (Albuquerque, NM)</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RAQUEL MATA, Individually and as**
**Mother and Next Fried of Minors JUAN**
**ALEJANDRO GUEVARA, JR., a minor, and**
**ANNA PAOLA GUEVARA, A minor and as**
**Personal Representative of THE ESTATE OF**
**JUAN ALEJANDRO GUEVARA, deceased,**

                    Plaintiff,
vs.                                                        No. 09-CV-00015 LAM/KBM

**MANAGEMENT & TRAINING CORPORATION,**
**and PHYSICIANS NETWORK ASSOCIATION**
**LLC, dba PNA OF TEXAS I LTD.,**

                    Defendants.

**Case settled out of court**

*September, 2014*

Expert Fee schedule for
Expert Witness
# John M. Robertson, MD, MPH

### Medical record reviews, depositions, affidavits
### and medical expert testimony

<u>Initial agreement</u> to review facts and discuss with counsel to decide if further review is required, consideration to serve as a named expert or to not proceed with further involvement in the case.  Guaranteed five hours of services (review and discussion) with a retainer paid in advance of service delivery of <u>$2500 (Flat fee)</u>. This is inclusive of GRT (NM tax).

### *<u>Subsequent work beyond the initial guaranteed five hours</u>*
### *<u>By mutual agreement as to the details of review and/or service provided as the</u>*
### *<u>"\Named" medical expert in the case</u>*

- <u>Review of medical records</u>, including discussions and evaluations of case issues, assessment of medical liability, both oral and written summaries and recommendations: <u>$400/hour.</u>

- <u>Provision of affidavits, documentation & formal reports</u> (*e.g. Rule 26 Reports*) for submission to opposing counsel and/or the Court:  <u>$450/hour.</u>

- <u>Depositions with opposing council</u> – Up to four hours (minimum billing) at a <u>Flat fee of $2500</u>, additional time exceeding four hours at a rate of <u>$500/hour or any part thereof.</u>

- <u>Court Testimony</u> – Regardless of time expended in testimony, unless otherwise agreed in advance a <u>Daily rate of $5000</u>. If testimony involves a second day in court the same daily rate is applied.  This pricing includes video testimony. Preparation time <u>in advance of testimony</u> is billed at the same rate as medical records review, namely <u>$400/hour</u>. Preparation and discussions conducted prior to testimony on the day of court appearance are included in the daily rate.

<u>Out-of town</u> (e.g. beyond the Greater Albuquerque Metropolitan Area, including the City of Santa Fe) Depositions, court appearances, and testimony <u>travel time</u> (by personal vehicle or other means) will be charged at "pro-rated" discount from my usual and customary consultant rate at, <u>$250 / hr.</u> for up to four hours.  For travel comprising an entire "working day" (i.e. 6 or greater hours) the rate is charged as a <u>flat fee of $1750/day</u>.  If air travel is required the fare will require pre-payment, unless otherwise agreed to in advance.  Required overnight stays are charged at a flat rate of an additional <u>$400/night</u> to cover lodging and per diem expenses.  All travel associated charges may be adjusted by mutual agreement and negotiation.