**Preliminary Expert Report - James Hugh Potts, II Esq.**
**Dated 16 December 2014**
*Re: Wilder v Rockdale County et al*
Civil Action File No. 1:13-CV-2715 RWS

Robert Douglas Hibler, MD
6787 Wynbrooke Cove
Stone Mountain, GA 30087

James Hugh Potts II, Esq.
1348 Ponce de Leon Ave
Atlanta, GA 30306
December 16, 2014

## By PDF format – E-mail attachment

Dear Mr. Potts,

This preliminary report is written to comply with Rule 26 of the Federal Rules of Civil Procedure Governing Disclosure prior to completion of discovery as it relates to the case of:

*Wilder v. Rockdale County et al.*
Civil Action File No. 1:13-CV-2715 RWS
In The United States District Court
for The Northern District of Georgia
Atlanta Division

In my capacity as a medical health care expert, I am attaching the following documentation to this letter:

1. Qualifications (See *Curriculum Vitae* attached to complaint);
2. No publications;
3. Fee schedule for expert work applicable to this case to be provided;
4. No cases in where in where I have testified in previous five (5) years.

Listed below are the case materials reviewed on which I base my expert opinions and the conclusions I have drawn and will testify to if required.

<u>Materials reviewed on which my preliminary opinions are based are as follows:</u>

1. Complaint.

1

Case 1:13-cv-02715-RWS   Document 169   Filed 02/04/15   Page 2 of 7

Preliminary Expert Report - James Hugh Potts, II Esq.
Dated 16 December 2014
Re: *Wilder v Rockdale County et al*
Civil Action File No. 1:13-CV-2715 RWS

2. All preliminary Discovery regarding decedent's incarceration in September 2012 until his in-custody death in September 2012;
3. Albert Wilder's Autopsy Report, Findings and Toxicology Report – Georgia Office of the Medical Examiner # 2012-1020601, dated 30 November 2012;
4. Albert Wilder's Medical records;

<u>Depositions and Exhibits completed to date, including the following:</u>
5. Deposition of Anne Marie Pierre, LPN;
6. Deposition of Helen Green, LPN;
7. Deposition of Phillip Nowlin, MD;
8. Deposition of Hazel Garth;
9. Deposition of Tiffany Hart;
10. Deposition of Stephanie Nunez;
11. Deposition of Louise Jones;
12. Deposition of Renee Wilder

<u>The following summarizes my preliminary opinions prior to the completion of discovery related to key points in Plaintiff's Complaint:</u>

**A. *The Decedent failed to receive appropriate, proper and timely medical care and treatment while incarcerated at the Rockdale County Jail.***

The medical and nursing care and treatment provided to Mr. Wilder while he was imprisoned at the Rockdale County Jail in September 2012 fell well below the generally required standard of care for nurses and doctors under the same or similar circumstances. The care Albert Wilder received was grossly incompetent by medical standards.

**B. *Anne Marie Pierre, LPN; Helen Green, LPN; Phillip Nowlin, MD; in their respective capacities as medical and nursing personnel had a responsibility to assure access to appropriate health, medical and nursing care for Mr. Wilder during his incarceration.***

Based upon the aforementioned records reviewed, the Defendants' care fell below the required standard of care and was grossly incompetent. Defendants observed Albert Wilder through a declining clinical state of abdominal pain, vomiting of bloody material and suffering up to and including his death. They ignored his

**Preliminary Expert Report - James Hugh Potts, II Esq.**
**Dated 16 December 2014**
**Re: *Wilder v Rockdale County et al***
Civil Action File No. 1:13-CV-2715 RWS

repeated complaints regarding abdominal pain. They let him suffer as his condition deteriorated.

### C. *Documentation of multiple observations (from logs) of the descendent describes an objective serious and deteriorating medical condition that should have been obvious to even an untrained lay person.*

These documented observations include: prolonged periods of crying out in profound abdominal pain, nausea, production of bloody vomitus, and continued cries of pronounced abdominal pain, decreasing levels of responsiveness, well documented in the above "Materials reviewed" including Jail records and logs, deposition transcripts, interviews, the GBI file, etc. Equally of note the decedent was on a *"30 minute watch"* in a medical holding cell in the medical unit signifying that it was recognized that he was at serious "risk", and in spite of this no medical evaluation was sought as his clinical state continued to rapidly decline.

In my medical opinion, the medical and nursing staff at the Rockdale County Jail fell below the required standard of care for physicians and nurses under the same or similar circumstances by keeping Mr. Wilder on site and by not transferring him to an emergency room.

Jail personnel and medical and nursing staff and their subordinates were aware of the seriousness of Mr. Wilder's medical condition. Deputy Garth contemplated calling 911 but understood from her security training that jail policy forbade her to do so if health care staff was present. She noted his screams of pain from 10:30 that morning until 2:55 that afternoon when she completed her shift. Deputy Hart observed Mr. Wilder at 3:05 p.m. laying in the fetal position holding his abdomen and saying he was in pain. Hart notified the LPN of his serious medical need, but was told that she was "too busy to attend to him." Hart further heard him screaming in pain when she observed him at 3:33, 3:55, 4:15, 4:20, 5:00, 5:14, 5:50 and 6:34 p.m.

At 6:55 p.m., Hart noticed vomit by Mr. Wilder's bed and on his mattress. It was described as "red like ketchup". She heard him yell, "help me, they are killing me." Hart informed LPN Pierre at that time he was getting worse. No assessment of his condition was rendered by the medical staff and neither the LPN nor the jail physician examined him.

3

Preliminary Expert Report - James Hugh Potts, II Esq.
Dated 16 December 2014
Re: *Wilder v Rockdale County et al*
Civil Action File No. 1:13-CV-2715 RWS

At 7:50 p.m. Hart noted Mr. Wider yelling, "I'm in pain, and they are killing me." When at 9:10 p.m. Hart took a break, he was crying out so loud that he could be heard over the entire medical unit. During her break Hart informed her supervisor that his medical condition was deteriorating. She observed him again at 9:50 p.m. and at 10:00 p.m., each time noting that he was crying in pain.

She gave report to Deputy Nunez, informing her of concerns regarding Mr. Wilder's medical condition. Nunez observed the decedent's cell 2 times according to Captain Munford based on his video review.

Nunez asked LPN Green about Mr. Wilder and she is reported to have stated that she "knew nothing about him." Moreover, she was unable to locate his medical records until after his death.

Over four hours passed during which time no further checks by security or medical staff were recorded. The next check at 4:30 a.m. was to discover that he was dead.

This conclusion is based on clinical notes and deposition testimony.

Equally if not more compelling are the log and Jail records and memos that explicitly acknowledge the gravity of the Mr. Wilder's medical condition. Deputy Garth noted in her deposition that she had informed Deputy Hart that the decedent was…"very ill" and required medical attention.

Regardless of formal medical or nursing training, it is reasonable to hold that even a lay person would recognize a need for medical assessment in an individual with the extensive problems Mr. Wilder had. He was complaining of intense abdominal pain, vomiting bloody appearing material, and demonstrating an inability to eat. Given the overwhelming picture, the failure to assure the decedent's safety with a necessary medical assessment and ultimately emergency medical care constitutes a deliberate indifference to Albert Wilder's medical needs and resulted in an entirely preventable death.

**D. Based upon the autopsy finding and what is documented about Albert Wilder's condition preceding his death, this 51 year old man experienced, more likely than not, a medically "preventable death".**

Case 1:13-cv-02715-RWS   Document 169   Filed 02/04/15   Page 5 of 7

Preliminary Expert Report - James Hugh Potts, II Esq.
Dated 16 December 2014
Re: *Wilder v Rockdale County et al*
Civil Action File No. 1:13-CV-2715 RWS

*However, the failure to seek appropriate medical intervention in spite of serious on-going medical signs and symptoms.*

In my medical opinion this represents a "preventable death" based upon documentation that lacks any contributing prior existing medical conditions that might have contributed to his death from a perforated duodenal ulcer. No documented conditions existed that explain his death such as perforated duodenal: hereditary factors, cancer, major trauma, recent surgery, etc. In essence Albert Wilder died due to a failure to seek medical assessment while Albert Wilder was clinically deteriorating, which, produced the fatal event namely, a perforated ulcer. Earlier transfer in his debilitated state to an appropriate medical facility would have more likely than not resulted in the necessary interventions and his survival.

E. The nurses fell below the required standard of care by failing to do the following:

   a. Repeat frequent documented abdominal exams;

   b. Perform vital signs, (esp. blood pressure, pulse);

   c. Perform mental status and pain assessments in an effort to make the correct diagnosis;

   d. Ensure that Albert be seen by a staff physician or transported to the nearest emergency department or both;

   e. Ensure that he was taken to an Emergency Department or other medical facility.

9. Dr. Nowlin fell below the required standard of care for physicians generally under the same or similar circumstances as follows:

a) Dr. Nowlin did not come in to see or perform a physical exam on Albert Wilder;

b) That Dr. Nowlin did not come in to see or perform an abdominal exam on Albert Wilder;

c) That Dr. Nowlin did not order Albert be taken to a Hospital Emergency Department;

d) That Dr. Nowlin, without a physical exam or any other testing, diagnosed Albert Wilder with constipation and ordered that Albert Wilder receive Dulcolax. He documented no differential diagnosis including severe abdominal pain, nausea and vomiting blood.

e) That Dr. Nowlin failed to perform a physical exam after ordering the Dulcolax; and

f) That Dr. Nowlin failed to consider evolving infection in the abdomen as a cause of Albert Wilder's severe pain, bloody vomitus, and death. As a proximate cause of the deliberate indifference of Garth, Hart, Nunez, and the grossly incompetent medical care of CorrectHealth

**Preliminary Expert Report - James Hugh Potts, II Esq.**
**Dated 16 December 2014**
**Re: *Wilder v Rockdale County et al***
Civil Action File No. 1:13-CV-2715 RWS

LPN's, Pierre and Green, and Correct Health Dr. Nowlin, Albert

Wilder suffered and died.

If called as a witness in this case, I could competently testify to the medical opinions outlined herein.

Sincerely,

Dr. Robert Douglas Hibler, MD