**Preliminary Expert Report – Gene Butt, Esq.**
March 19, 2015
Re: *Wilder v. Rockdale County et al*
Civil Action File No. 1:13-CV-2715 RWS

Doreen Hobbs, RN
3854 High Shoals Drive
Norcross, GA  30092

Gene Butt, Esq.
1348 Ponce de Leon Ave
Atlanta, GA  30306
March 19, 2015

<u>**By PDF format – E-mail attachment**</u>

Dear Mr. Butt,

This is the preliminary report as it relates to the case of:

*Wilder v. Rockdale County et al.*
Civil Action File No. 1:13-CV-2715 RWS

In my capacity as a Registered Nurse, this is my opinion and I am also attaching the following documentation:

1. Qualifications (current resume)
2. Listing of all cases in which I have been deposed or testified in court; and
3. Fee Schedule for expert work applicable to this case.

I have not been published and therefore, a list of publications will not be included.

Listed below are the case materials which were provided for review and were used to base my expert opinion regarding the above listed Civil Action  File No. 1:13-CV-2715 RWS

**<u>Documents Reviewed</u>**

1. Civil Action No. 1:13-CV-2715 Renee Wilder v. Rockdale County Amended Complaint
2. Albert Wilder's Jail Records, including Booking Report dated 09/22/12 and Medical Records dated 09/22/12 @ 07:50 thru 09/24/12 @ 08:30 in addition to late entries posted at a later time.

1



3. Nursing Protocols, including the Nursing Protocol for Constipation – Reference: Assessment Made Incredibly Easy 2nd edition, 3 Minute Assessment Patient Care Guidelines for Nurse Practitioners – Correct Health Constipation NP-CO3-1009 (revised 1104) pg 1 of 2 (although the pages of this protocol differ, each page is numbered page 1 of 2 as noted on the bottom of both pages of the constipation protocol) used and dated 09/23/12.
4. Special Diet Request Dated 9/23/12 – Correct Health Special Diet Request S-01RT-060623
5. Intake Screening/Health History I-04F-080601 pages 1 and 2 (revised 110301) dated 09/22/12 @ 07:50
6. Rockdale county Jail Daily Post Log dated 09/23/12
7. Rockdale County Jail – Classification Unit – Inmate Segregation Record –Date Admitted 09/23/12 time 2400 for Cell # 8MHC2
8. Rockdale County Sherriff's Office Jail Division Miscellaneous Incident Report dated 09/23/12 @ approximately 1500-2300 – Inmate Name: Wilder, Albert SO#198312 – Deputy Hart, # 2559
9. Deposition of Ann-Marie Pierre, LPN Volume 1 - dated 01/15/14 @ 10:51 a.m.
10. Volume 2 of the deposition of Ann-Marie Pierre LPN dated 02/19/14 @ 12:05 p.m.
11. Exhibits attached to Volume 2 of the deposition of Ann-Marie Pierre, LPN
12. Deposition of Helen Green, LPN dated 01/1/14 @ 12:40 p.m.
13. Deposition of Phillip W. Nowlin, M.D. dated 03/10/14 @ 10:14 a.m. with attached exhibits
14. Deposition of Lieutenant Louise Jones on 03/29/14 @ approximately 11:06 a.m.
15. Deposition of Deputy Hazel Garth dated march 03/06/14 @ approximately 2:42 p.m. with included Exhibits, including No. 1, GBI Investigative Summary and No. 2, Rockdale County Daily Post Log
16. Deposition of Deputy Tiffany Hart dated 03/19/14 @ 2:50 p.m.
17. Deposition of Deputy Stephanie Nunez dated 03/05/14 @ 10:06 a.m.
18. Administrative Leave with Pay notice for Deputy Stephanie A. Nunez for the following dates: 09/24/12 thru 02/04/13.
19. Resignation letter of Deputy Stephanie A. Nunez dated 02/14/13
20. Rockdale county Sheriff's Office Internal Affairs Investigation IA-11-12 in the Matter of Deputy Stephanie Nunez #22572
21. Georgia Bureau of Investigation Region 10 Investigative Summary 10-0072-01-13 – Special Agent Heather Strickland and Deputy tiffany Hart
22. Georgia Bureau of Investigation Region 10 Investigative Summary 10-0072-01-13 – Special Agent Heather Strickland and Inmate Breon Prad.
23. Georgia Bureau of Investigation report including Albert Wilder's Autopsy Report, Death Certificate, and toxicology report
24. Sprint telephone call details for # 404-759-7535 - Dr. Phillip Nowlin for period 09/21/12 04:02 p.m. thru 09/24/12 12:15 p.m.

2



### Preliminary Opinion of Doreen Hobbs, RN

It is my professional opinion that while housed in the Rockdale County Jail, including the Medical/Special Needs Unit, Albert Wilder's nursing care fell far below the standard of care for Licensed Practical Nurses in the state of Georgia. I am also of the opinion that the care Albert Wilder failed to receive from Ann-Marie Pierre, LPN and Hazel Green, LPN constitutes gross negligence  A. Gilbert, LPN's nursing also fell below the standard of nursing for Licensed Practical Nurses. While housed in the Medical/Special Needs Unit, Albert Wilder failed to be physically assessed by any medical professional with the exception of one Licensed Practical Nurse and only on one occasion from the time Albert Wilder entered the unit until the time Albert Wilder was found dead. Deputies assigned to the Medical/Special Needs Unit for the purpose of monitoring patients/inmates failed to follow Rockdale County Jail's policy in relation to the Medical/Special Needs Unit observation and abandoned this patient. Albert Wilder was also abandoned by Ann-Marie Pierre, LPN and Hazel Green, LPN. I am also of the opinion that Dr. Phillip Nowlin, Medical Director for the Rockdale County Jail Medical division, failed to have readily available unit specific policies and procedures for medical/nursing staff to reference and utilize, as is required by Correct Health policies and procedures. Correct Health failed to ensure proper and adequate staffing during Albert Wilder's incarceration at Rockdale County Jail in September 2012. It was testified to that on weekends at the Rockdale County Jail, there were no Registered Nurses, Mid-Level Practitioners or physicians present and supervising the Licensed Practical Nurses.

I am basing my opinion on the materials related to Renee Wilder v. Rockdale County that were provided  for my review in this case, the Correct Health Policy and Procedure Manual included in the exhibits as well as the current standard of care for LPN's in the state of Georgia.

My reasons for theses opinions are as follows:

**Failure to Adequately Monitor/Assess Assigned Patient:**

As evidenced by the nursing documentation and deposition testimony, Ann-Marie Pierre, LPN and Helen Green, LPN, A. Gilbert, LPN, Deputy Hazel Garth, Deputy Tiffany Hart and Deputy Stephanie Nunez chose not to monitor/assess Albert wilder per Correct Health and Rockdale County Jail policies while Albert Wilder was housed as a patient in the Medical/Special Needs Unit of the Rockdale County Jail.

Testimony and documentation indicate that Ann-Marie Pierre, LPN denied Albert Wilder was experiencing any pain and minimized his complaints of excruciating pain. Deputy Garth testified Ann-Marie Pierre stated Albert Wilder was faking. Ms. Pierre, LPN testified the patient's blood pressure did not indicate the patient was having any pain. Ann-Marie Pierre, LPN chose to omit the

3



required Subjective section of the constipation protocol being utilized. After the death of Albert Wilder, Ann-Marie Pierre, for the first time, completed the subjective section of the Constipation Protocol and rated Albert Wilder's pain @ 0/10 in a Late Entry note on 09/24/12.

Although the constipation protocol used by Correct Health indicates it was designed using a reference for Nurse Practitioners, Ann –Marie Pierre, LPN stated it was what she was told to use for patients she needed to assess in the medical area. And, although the form indicates it is a format for a 3 minute assessment, Ms. Pierre chose to omit the great majority of the Subjective and Objective data sections of the constipation protocol she used on 09/23/12. Some late entries are noted to the objective data section following the death of Albert Wilder and were inserted by Ann-Maire Pierre on 09/24/12 hours after he was found lifeless.

It was reported in deputy deposition testimony that Albert Wilder was continually screaming in severe abdominal pain. The objective data section of the constipation protocol re: Abdomen was left blank until after the death of Mr. Wilder.

Albert Wilder's severe pain being caused by a perforated duodenal ulcer and acute peritonitis were completely discounted by Ann-Marie Pierre, LPN and Dr. Phillip Nowlin. Both testified in deposition their belief that if the patient was truly experiencing pain, Albert Wilder's blood pressure and heart rate would be expected to be higher than those recorded on 09/23/12. No lab work, no radiology studies and incomplete or nonexistent assessments were used to come to the conclusion that the patient was faking his pain.

Per the constipation protocol, Dulcolax was ordered as being a bedtime dose. Ann-Marie Pierre, LPN testified she administered the drug at 9:40 a.m. many hours prior to any typical bedtime dose of medication. This might be considered as Ann-Marie Pierre, LPN practicing medicine without a medical license. Pierre's actions indicate she either does not care or does not understand the proper use of the nursing protocols or both. Protocols are to provide precise instruction/direction to be followed in order to ensure and promote safety for the patient.

A drop in patient blood pressure could be an indication of an internal bleed. It was grossly negligent and deliberate of Pierre, LPN to not properly follow the constipation protocol assessment as designed and it was grossly negligent for her to not recheck patient/inmate's vital signs again, including pain level, and any response to any PRN medication administered by Ann-Marie Pierre, LPN . An approximately. 18 % drop in the systolic blood pressure was documented in a 26 hour period in a patient who was having severe abdominal pain and was placed on the Medical/Special Needs Unit with MD orders for Albert Wilder to be observed for 24 hours. There is no documentation of any observations re: patient Albert Wilder after he was placed on the Medical/Special Needs Unit.

Although Pierre, LPN denies it, deputy depositions indicate Pierre could hear or was told on more than one occasion or both, that the patient/inmate was yelling in pain and vomiting. In response to

4

D&

deputy concerns, Pierre said at one point, it was, "...not an emergency..." and she would get to Albert wilder when she could.

Although Mr. Wilder's Intake form indicates he has a history of diabetes, Ann-Marie Pierre, LPN chose not to obtain a finger stick blood glucose level as the Objective Data Section of the Constipation Protocol requires. She also chose to leave the allergy section blank although the patient had a documented allergy to fish. This could be a problem if a patient is to receive contrast during radiology studies to address the source of the presenting complaint of severe abdominal pain. Ann-Marie Pierre, LPN was grossly negligent in her use of the constipation protocol.

Ann-Marie Pierre, LPN, documented on Albert Wilder's medical chart upon Mr. Wilder's arrival to the Medical/Special Needs Unit on 09/23/12 @ 09:40 in the morning and not again until 20:30 that same night. Based on the chosen protocol by Ann-Marie Pierre, LPN, Albert Wilder had been administered Dulcolax tablets to address his abdominal pain, but no note is found on his medical record from Rockdale County Jail re: why this medication was given at least 10 hours prior to the assigned time and /or Mr. Wilder's response to the medication. Per Ann-Marie Pierre's testimony during deposition, Ms. Pierre believes she may have gone into Cell #8MHC2 one time in those appapproximatelyimatelyrox 11 hours Albert Wilder was assigned to Ms. Pierre, however, no documentation was found to support Ann Marie Pierre, LPN entering patient Albert Wilder's Medical/Special Needs Unit locked cell.

Nurse Pierre admitted she did not visualize the patient or assess the patient prior to calling Dr. Nowlin at 20:30 on 09/23/12 to notify the doctor that Albert Wilder had vomited. Ann-Marie Pierre, LPN knew Albert Wilder had vomited because she was told by Deputy Stephanie Hart and not because Ann –Maire Pierre, LPN visualized or assessed the patient while in cell #8MHC2. Ms. Pierre had chosen not to enter Mr. Albert Wilder's locked cell and chose not to assess his immediate emergent needs in person while Albert Wilder was locked in Cell #8MHC2. It appears by review of Dr. Phillip Nowlin's call log that Ann Marie Pierre, LPN called Dr. Nowlin a considerable amount of time after Albert Wilder had vomited and the syrup like substance had been cleaned up by Trustee Breon Prad. Just as it is evident by phone record review, Ann-Marie Pierre, LPN waited a considerable amount of time before her first notification to Dr. Phillip Nowlin of Albert Wilder's initial complaints of severe abdominal pain. Ann-Marie Pierre, LPN waited approximately. 90 minutes before placing a call to Dr. Nowlin, however, Ann-Marie Pierre documented the call was placed at 9:40. Phone records indicate, the call was actually placed at 11:17 a.m.

Mr. Wilder was abandoned. Deputies testified that neither a nurse nor doctor ever stepped foot into Albert Wilder's Medical/Special Needs Unit Cell #8MHC2 from the time he entered the locked cell until after his death. Lack of any documentation regarding patient assessments supports this opinion.

Per the deposition of Deputy Tiffany Hart, during the early part of her 3 pm to 11 pm shift on 09/23/12, Hazel Green, LPN, was unaware of the patient Albert Wilder in Cell #8MHC2. It is

5

testified that when asked about Albert Wilder, Hazel Green, LPN stated she would need to locate the medical chart for the patient/inmate being held in Medical/Special Needs Unit Cell #8MHC2 whose existence Hazel Green, LPN was unaware of. Deposition testimony of Deputy Tiffany Hart stated Hazel Green, LPN told Deputy Hart a shift change report was not received on Mr. Wilder. Although, in her deposition, Hazel Green, LPN stated she had received a nurse to nurse report regarding Mr. Wilder at the beginning of her 7 pm to 7 am shift on 09/23/12.

Per the deposition of Helen Green, LPN, the statement on page 78 re: the death of Mr. Albert Wilder," ...It is a way of life. Everybody comes and they go, so into the world, you leave the world..." further exhibits her continued grossly negligent attitude toward the life of Mr. Albert Wilder.

Although there is deputy testimony during depositions that Albert Wilder was screaming in pain for hours on end and even exhibited signs of becoming weaker and weaker, there was no documentation found on the medical chart for Albert Wilder indicating a LPN, RN, Mid Level Practitioner or MD had been in to assess Mr. Wilder after he was placed into Cell # 8MHC2.

There is no documented evidence that the chief complaint of abdominal pain was ever again addressed by any LPN, RN, Mid-Level or MD. The fact that not one person medically trained reassessed this patient also constitutes gross negligence.

Deputies Hazel Garth, Tiffany Hart and Stephanie Nunez all failed to observe Albert Wilder a minimum of every 30 minutes as was required by Rockdale County Jail Policy. All three deputies failed to accurately document on the Rockdale County Logs provided by the jail for documentation of inmate observation and activity. During deposition testimony, none of the deputies understood what was required when assigned to monitor a Medical/Special Needs inmate/patient. It appears the only time another staff member from Rockdale County Jail entered Cell #8MHC2 while Albert Wilder was locked in this cell, occurred when inmate Breon Prad and Deputy Tiffany Hart entered to clean up vomit. Breon Prad testified in deposition that Tiffany Hart asked Albert Wilder to stop vomiting so Trustee Breon Prad could clean up the cell of the syrup like liquid on the floor and bed. Mr. Albert Wilder reportedly responded that he could not help vomiting.

Dr. Phillip Nowlin, Ann-Marie Pierre, LPN, Hazel Green, LPN and Deputies Garth, Hart and Nunez all failed to summon emergency medical care for Albert Wilder when responsible for observing and monitoring him. Deputy Garth and Deputy Hart both testified they believed Mr. Albert was in severe pain but chose not to summon emergency help for this patient/inmate after nursing assigned to this patient/inmate chose not to respond to deputy requests for the patient to be seen/evaluated by nursing.

**Failure to Follow Correct Health Policy and Procedures**

Correct Health Policy and Procedures dictate Medical/Special Needs Unit staff is to communicate with each other regarding assignments. Based on the testimony, nursing staff and deputies assigned to the Medical/Special Needs Unit did not have any communication between nursing and deputies regarding Albert Wilder with the exception of being told he was not really in pain when deputies addressed Mr. Wilder's complaints of pain with Ann-Marie Pierre, LPN. Ann-Marie Pierre, LPN and Hazel Green, LPN admitted they did not know the names of nor were they sure of which deputies were assigned to monitoring the patients/inmates during the nurses' 12 hour assignments on the Medical/Special Needs Unit 09/23/12 thru 09/24/12. Both nurses also admitted to having no conversations with other staff responsible for observing Albert Wilder while on the Medical/Special Needs Unit. Nursing and deputy staff does not communicate with each other and they do not understand or choose to ignore, or both, the communication required by Correct Health Policy for patient/inmate safety and continuity of care.

The Inmate Intake form completed on 09/22/12 @ 07:50 a.m. by A. Gilbert, LPN notes diabetes mellitus as a chronic medical problem and Diabeta as a regular medication for this inmate. Correct Health Policy and Procedures dictate a form be completed by Ms. Gilbert and placed for medicine to review to ensure this inmate's medication regimen be continued while incarcerated. Per Correct Health policy as well, a release of information form should have been completed so Albert Wilder's medical records could be obtained from his outside provider and current medications for diabetes could be ordered to continue treating his prior medical conditions. It seems, A. Gilbert, LPN chose not to submit the forms as they were not found on Mr. Albert's medical chart and the patient's diabetes does appear to have been addressed during his incarceration except during the Intake Assessment on 09/22/12. Correct Health policy requires continuity of care as do the Standards of Care for Nursing in Georgia.

Correct Health Policy and Procedure manual dictates that each medical facility will have unit specific policies and procedures approved and updated annually by the Medical Director. The policy states that each facility will have a Site Specific Infirmary Care Manual or a Medical Observation Unit Manual. No staff member was aware of a specific policy and procedure manual for Rockdale County's Jail Medical/Special Needs Unit. Based on deposition testimonies, deputies and nursing were uncertain of their responsibilities when assigned to Medical/Special Needs Unit at the Rockdale County Jail. As evidenced by statements during depositions, both Ann-Marie Pierre, LPN and Hazel Green, LPN did not have a clear understanding of nursing duties for patients housed in the Medical Special Needs Unit. Both nurses chose not to assess Albert Wilder after he was placed behind two locked doors. Dr. Nowlin's phone orders read to place the patient in the Medical/Special Needs unit and to observe Albert Wilder for 24 hours. The medical record for Albert Wilder did not contain a single nursing note addressing what was observed by Ann-Marie Pierre, LPN or Hazel Green, LPN regarding Albert Wilder, a patient considered sick enough to be placed in an isolated cell on the Medical/Special Needs Unit. In fact, only one nursing note was



7

written between 09/23/12 @ 09:40 and 09/24/12 @ 04:55. This note was at 20:30 on 09/23/12 and also did not include any nursing observations for Albert Wilder.

Documentation fell well below nursing standards. Hazel Green, LPN did not have one note about her assigned patient Albert Wilder until 10 hours after her shift started and Albert Wilder was dead.

Per Correct Health Policy, medication administration is to be documented on a Medication Administration Record. Ann-Marie Pierre, LPN, stated in her deposition testimony that she documented giving 3 Dulcolax tablets and that she did not document as per policy on a Medication Administration Record. Ann-Marie Pierre, LPN stated she documented the administration of Dulcolax on the constipation protocol. After review of the constipation protocol, it is obvious there is no section for documenting the administration of a medication.

Based on answers during depositions, it is obvious Ann-Marie Pierre does not have a clear understanding of SOAP note charting. SOAP note charting uses subjective, objective, assessments and planning information based on a patient's current situation. The constipation protocol is set up for SOAP charting but Ann-Marie Pierre, LPN chose not to document on this patient as the protocol is designed in order to enhance patient safety. Choosing to omit the allergy and subjective sections in their entirety and to sporadically complete the objective section leaving out key information needed when implementing this protocol is considered grossly negligent.

Correct Health Policy and Procedure Manual instructs that protocols are to be reviewed and revised annually and based on the revision dates on the bottom of the protocol forms, it appears evident this is not being done. It appears the last revision for the Constipation Protocol was in 2004.

Per Correct Health Policy, patient charts must be kept so they may be quickly obtained if needed. After the death of Albert Wilder, Dr. Nowlin had requested via phone some information from the Albert Wilder's medical record. Hazel Green, LPN was unable to locate the chart. Per deposition testimony, Hazel Green, LPN told Dr. Nowlin, she would have to call him back with the requested information after locating the chart. Per testimony, Hazel Green, LPN had to call Ann-Pierre, LPN at home to get assistance with locating Mr. Wilder' Chart.

The Emergency Services Policy for Correct Health indicates when a patient's needs exceed the capabilities of the facility...., the patient is to be sent to the hospital in an expedient manner. This did not happen in the case of Mr. Albert Wilder. Mr. Wilder was dead before 911 was called, although, he reportedly had been screaming in pain for many hours during the morning, evening and night shifts and nursing staff refused to address Albert Wilder.

**Falsification of Documents**

Ann-Marie Pierre, LPN falsified documentation on Albert Wilder's medical record on more than one occasion. A exhibit copy exists of the constipation protocol chosen to be used by Ms. Pierre in which the Staff Signature/Title and Date/Time section is left unsigned by the nurse initiating the protocol. A second and more completed copy of this document exists in the Exhibits for Ann-Marie Pierre's deposition. On this second copy, the Staff Signature/Title and Date/Time section are completed and dated and timed for 09/23/12 @ 09:40. It is believed by this writer that the signature, date and time were added on the next day 09/24/12 at the same time Ann-Marie Pierre, LPN was placing late entries on Albert Wilder's medical record. Ann-Marie Pierre decided to make an attempt to have it appear as though she signed this form the day prior when choosing to initiate the Constipation Protocol. Ann-Marie Pierre, LPN admitted in deposition testimony to falsifying the time she spoke with Dr. Nowlin. Ms. Pierre testified she started the protocol, gave the Dulcolax in the morning and then called Dr. Nowlin, athough her charting indicates she called Dr. Nowlin at 09:40. Phone records for Dr. Nowlin's phone number in September 2012 prove Nurse Pierre waited approximately 90 minutes prior to contacting Dr. Nowlin about his patient Albert Wilder who was emergently brought by wheelchair from the general population down to the medical unit to be evaluated for severe abdominal pain.

**Standards of Care Violated**

The standards of care for Licensed Practical Nurses in the state of Georgia were violated in the ways listed above as well as in the following: LPNs in the state of Georgia are required to work under the direct supervision of a registered nurse, Mid Level Practitioner or MD. Dr. Phillip Nowlin, Rockdale County Jail and Correct Health failed to provide supervision and direction required when employing LPNs. Both, Ann-Marie Pierre, LPN and Hazel Green, LPN testified it was the common practice at the Rockdale County Jail on the weekends not to have an RN, a Mid Level Practitioner or MD available and in the facility when LPNs were working.

**Substandard Nursing Knowledge**

Based on depositions, Ann-Pierre, LPN and Hazel Green, LPN seem to lack some of the most basic nursing knowledge as evidenced by responses during depositions to questions regarding guiac, orthostatic vital signs, various causes for abdominal pain, as well a lack of understanding for possible indications for drops in blood pressure and heart rate and what an AED evaluates. Neither Licensed Practical Nurse seems to have a clear understanding of importance of communication amongst medical staff assigned to caring for a patient in order to promote required continuity of care. The lack of any nursing documentation indicates neither nurse understands what it means to monitor a patient, as the MD orders called for or chooses not to follow MD orders or both. The fact that both nurses indicated in deposition that they did not feel overworked and that they were able to get their jobs done is frightening in that when only having two patient's in the Medical/Special Needs Unit, one of those patients is assessed only once in a 20 hour stay on the Medical Special Needs Unit of the Rockdale County Jail 09/23/12 thru 09/24/12.

9

DOREEN HOBBS, RN BS
3854 HIGH SHOALS DRIVE
NORCROSS, GA  30092
404-403-9007

**EMPLOYEMENT HISTORY**

**Emory University Hospital - Main Campus -** October 2013 to Present

Emergency Department Staff RN – Full Time

**Dekalb Medical Center    Decatur, GA and Lithonia, GA -** June 1994 – January 2014

June 1994 thru November 2009 – Hospital Wide PRN Float Pool RN – Decatur, GA and Lithonia, GA campuses

November 2009 to December 2010 –Interventional Radiology and Endovascular Lab Procedural Nurse – Full Time Staff RN - Decatur, GA and Lithonia, GA campuses.

December 2010 thru March 2013 - Clinical Coordinator Interventional Radiology and Endovascular Lab - Decatur, GA and Lithonia, GA campuses.   Responsibilities included posting openings, interviewing/hiring, scheduling, annual reviews/evaluations, policy and procedures compliance monitoring, training/orientation, coaching, etc.

March 2013 – September 2014 - Nurse Navigation Interventional Radiology: physician and patient notifications and scheduling.  Attended weekly Tumor Board Meetings, Shared Governance Involvement, CLABSI Committee.

**Memorial Health University Medical Center - Savannah, GA -** May 2006 thru November 2009

Emergency Department (Level 1 Trauma Center) – Staff RN – Full Time

**Ross Health Care Consultants -** 1993 thru 2005

Consultant performing Mock State and Federal Surveys and Legal Nurse Consulting - Chart Reviews

**Grady Memorial Hospital - Atlanta, GA -** October 1991 thru May 1994

Burn Unit - Staff RN

10



**EDUCATION**

Georgia State University – Bachelor of Science – Nursing – 1991

**CERTIFICATIONS/LICENSES**

ACLS, BLS, NIHSS CERTFICATE, FORENSIC NURSING CERTIFICATE, NURSE NAVIGATION CERTIFICATE, REGISTERED NURSE - STATE OF GEORGIA

**Doreen Hobbs, RN**

**Listing of Legal Cases Having Been Deposed in or Having Testified in Court**

No depositions or testimonies in court in the past 20 years

12

**Doreen Hobbs, RN**
**Fee Schedule for Wilder v Rockdale Civil Action # 1:13-CV-2715 RWS**

Review of Medical Record including discussions, written summaries, affidavit s, formal reports and preparation and discussions prior to testimony: $150/hour

Deposition with opposing counsel: $200/hour

Court Testimony: $200.00

Travel: $0.555/mile in addition to 50% hourly rate

*Doreen Hobbs, RN*
*3/19/15*

13