**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

RENEE WILDER, Individually    :
and as Surviving Spouse and Next  :
Friend and Administrator of the   :
Estate of Albert Wilder, deceased,  :
                               :    CIVIL ACTION NO.
     Plaintiff,            :    1:13-CV-2715-RWS
                               :
v.                              :
                             :
ROCKDALE COUNTY., *et al.*,     :
                             :
     Defendants.          :

<u>**ORDER**</u>

     This case comes before the Court on Plaintiff's Motion to Strike

Rockdale County's Answer [98]; Defendant CorrectHealth Rockdale, LLC,

CorrectHealth, LLC, Helen Green, Phillip Nowlin, and Anne Marie Pierre's

Motion for Partial Summary Judgment [142]; Plaintiff's Motion for Sanctions

Against CorrectHealth [175]; Plaintiff's Motion to Compel [176]; and

Plaintiff's Amended Motion to Compel [180].  After reviewing the record, the

Court enters the following Order.

## Background

This action arises out of the death of Albert Wilder while in custody at the Rockdale County Jail on September 24, 2012. Renee Wilder, Mr. Wilder's surviving spouse, sues Rockdale County, several county officials, the Sheriff, and several deputies for their deliberate indifference to Mr. Wilder's serious medical needs. In addition, Plaintiff sues the medical providers at the jail, CorrectHealth Rockdale, LLC and CorrectHealth, LLC (collectively, "CorrectHealth"), including employees Ann-Marie Pierre, LPN, Helen Green, LPN, and Phillip Nowlin, MD.

CorrectHealth is a private company that provides healthcare services to inmates. (Defs.' SMF, Dkt. [142-5] ¶ 2.) CorrectHealth "contracted with the Rockdale County Jail to provide administrative services, nursing and physician care, regularly-scheduled sick call services, medical records management, pharmacy supply and services management, and other related services." (Id. ¶ 5.)

Between the morning of September 23 and the early morning of September 24, 2012, Plaintiff alleges that Mr. Wilder complained of severe abdominal pain to jail guards while housed in a cell in the jail's medical unit.

(Am. Compl., Dkt. [126] ¶ 13.)  Mr. Wilder was in severe pain throughout the day and deputies heard him repeatedly cry out for help.  (Id. ¶¶ 34-35.)  By the evening, Mr. Wilder was vomiting blood.  (Id. ¶ 55.)  The nurses were aware of Mr. Wilder's complaints but took no action.  (Id. ¶ 57.)  Late that night, Mr. Wilder's condition deteriorated, but neither the guards nor medical staff helped him.  (Id. ¶¶ 61-90.)  In the early morning hours of September 24, 2012, Mr. Wilder lost consciousness and died.  (Id. ¶¶ 117-18.)

Plaintiff brought numerous claims against Defendants under both state law and 42 U.S.C. § 1983.  The CorrectHealth Defendants move for partial summary judgment on the § 1983 claims.  Plaintiff also moves for discovery sanctions against Defendants.

## Discussion

## I.    Spoliation of the Rockdale County Jail Surveillance Video

Plaintiff moves to strike Defendant Rockdale County and Defendant CorrectHealth's Answers based on their alleged spoliation of surveillance video.  Plaintiff asserts that she requested any video recordings of Mr. Wilder while he was in jail, including when he was in the medical area.  Defendants provided some video footage of the unit from the evening of September 23 to

3

the morning of September 24, 2012, but Plaintiff argues that Defendants failed to provide footage from the morning and afternoon of September 23.  Plaintiff contends that this video is critical to showing that Defendants denied Mr. Wilder medical care in violation of his constitutional rights.  Therefore, Plaintiff argues that it is necessary to sanction Defendants by striking their Answers.  In her Motion for Sanctions Against CorrectHealth, as an alternative to striking Defendants' Answers, Plaintiff asks the Court for a jury instruction that spoliation creates a rebuttable presumption that the evidence would have been harmful to Defendants.  (Dkt. [175] at 9.)

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009) (internal quotation marks omitted) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  A party seeking spoliation sanctions must prove that (1) the missing evidence existed at one time; (2) the defendant had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff's prima facie case.  See In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).

4

Furthermore, in considering particular spoliation sanctions to impose, "courts should consider the following factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded." Id. (citing Flury v. Diamler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005)).

Even if the Court finds spoliation, however, a sanction of default or an instruction to the jury to draw an adverse inference from the party's failure to preserve evidence is allowed "only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). While malice is not required in order to find bad faith, mere negligence in destroying evidence is not sufficient to justify striking an answer. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009). In analyzing whether sanctions for spoliation are warranted, "[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Flury, 427 F.3d at 946.

5

After reviewing the record, the Court finds that there is insufficient evidence to support a finding of bad faith on the part of Defendants. After Mr. Wilder died, the Rockdale County Sheriff asked the Georgia Bureau of Investigation ("GBI") to commence an investigation to determine if Mr. Wilder's death was a homicide. (Bogardts Aff., Dkt. [122-1] ¶¶ 2, 4.) On September 26, 2012, Assistant Jail Commander Jim Bogardts downloaded video that the GBI requested of the jail's medical unit, where Mr. Wilder was housed. (Id. ¶ 3.) The GBI did not request specific time frames for the video, however. (Id.) So, Mr. Bogardts downloaded video of Mr. Wilder's cell and of the medical unit to see who was in the area around the time Mr. Wilder died. (Id. ¶ 4.)

One video shows Mr. Wilder in his cell from around 9:55 a.m. on September 23, 2012 (when he arrived in his cell), to about 9:07 a.m. on September 24, 2012 (after he died). (Defs.' Resp., Dkt. [122] at 2.) Another video shows two camera views in the medical area beginning around 10:00 p.m. on September 23, 2012, and running until about 6:00 a.m. on September 24, 2012. (Id.) That video thus covers several hours before Mr. Wilder's death, but it does not include footage of the medical unit throughout the day on September

6

23 when Plaintiff alleges Mr. Wilder was ignored by jail and medical personnel as he cried out for help.

Still, there is no evidence that either Rockdale County or CorrectHealth destroyed that portion of the video in bad faith.  To begin with, CorrectHealth did not have control over the video, as only senior jail staff and the Sheriff had access to the video-downloading system.  (Bogardts Aff., Dkt. [122-1] ¶ 9.)  "It is axiomatic that in order for there to be spoliation, the evidence in question must have existed and been in the control of a party."  <u>Sentry Select Ins. Co. v. Treadwell</u>, 734 S.E.2d 818, 848 (Ga. Ct. App. 2012).[1]  It is not clear what CorrectHealth could have done to get Rockdale County to preserve video beyond what it turned over to the GBI.  Moreover, there is no evidence that CorrectHealth played any role in deleting video footage from the medical unit.

As for Rockdale County, a third-party vendor programmed the detention center's video-recording system to automatically overwrite old video after approximately thirty days.  (Bogardts Aff., Dkt. [122-1] ¶¶ 7-8.)  "Absent

---

[1]The Eleventh Circuit has discussed and relied on Georgia state law in spoliation cases, even though federal law applies to the issue of spoliation sanctions, because "Georgia state law is wholly consistent with federal spoliation principles." <u>Flury</u>, 427 F.3d at 944.

7

exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." FED. R. CIV. P. 37(e).  Here, Mr. Bogardts downloaded about 24 hours of video of Mr. Wilder's cell, as well as about eight hours of video of the broader medical unit outside his cell, in response to the GBI's inquiry.  Rather than evidencing bad faith, it appears that Mr. Bogardts attempted to provide the GBI information relevant to the circumstances of Mr. Wilder's death before the footage was automatically overwritten.  And even if Defendants were grossly negligent in failing to preserve video from earlier in the day, gross negligence is not enough to strike Defendants' Answers.  See In re Delta/Airtran, 770 F. Supp. 2d at 1313 (noting that "[i]in hindsight, Delta should not have waited" to take steps to preserve e-mails, but "without some evidence that Delta's delay was intentional, its failure to act more quickly does not prove bad faith").

The Court further notes that Mr. Bogardts downloaded the footage within a couple of days of Mr. Wilder's death, but Plaintiff did not file this action until nearly one year later, well after the video-recording system overwrote the footage.  So, even if Rockdale County owed Plaintiff a duty to preserve

8

evidence within the thirty-day window because litigation was foreseeable, Rockdale County did not know the scope of Plaintiff's claim until some months later.  In contrast, in <u>Flury v. Diamler Chrysler Corp.</u>, the court found bad faith in a products liability action when a plaintiff ignored a defendant's request to examine the subject vehicle and allowed the vehicle to be sold for salvage without notifying the defendant.  427 F.3d at 944.  Here, Rockdale County preserved hours of footage surrounding the time of Mr. Wilder's death well before suit, although not as much as Plaintiff would like, and the remainder was overwritten long before Rockdale County received any specific discovery requests.  The timing of the destruction, and the fact that much video was preserved, cuts against Rockdale County's culpability and a finding of bad faith.

The Court also finds that Plaintiff is not prejudiced to such an extent that the only remedy is striking Defendants' Answers or giving an adverse-inference instruction.  In <u>Flury</u>, the defendant was extremely prejudiced because the defective car itself was the subject of the suit.  The court found that "direct examination of the vehicle's condition was critically important" to identifying

9

any defects, but the vehicle's spoliation "forced experts to use much less reliable means of examining the product's condition." Id. at 946.

On the other hand, in In re Delta/AirTran, the court found that any prejudice the plaintiffs suffered was mitigated by their opportunity to depose Delta employees who had knowledge of facts related to the plaintiffs' claims. See 770 F. Supp. 2d at 1311. In this case, Plaintiff has deposed all the jailers and medical providers who were involved in Mr. Wilder's incarceration and care. (See CorrectHealth's Resp., Dkt. [183] at 12.) While video might have shown the jailers' actions throughout the day of September 23, the video is not the only evidence available to Plaintiff to help her prove her case, as it was in Flury. The ability to depose witnesses at least partially mitigates the loss of the video. Moreover, Plaintiff does have a number of hours of video of the medical unit, so video evidence of Defendants' actions is not wholly absent. Consequently, Plaintiff is not prejudiced to such an extent that she is unable to prove her case. See Point Blank Solutions, Inc. v. Toyobo Am., Inc., No. 09-61166-CIV, 2011 WL 1456029, at *27 (S.D. Fla. Apr. 5, 2011) (stating that if the plaintiff "cannot show that it is 'sufficiently impaired in [its] ability to prove its case,' then it cannot show 'entitlement to an adverse inference based on any

10

destruction of [documents]" (quoting <u>FTC v. Nationwide Connections, Inc.</u>, No. 06-80180-CIV, 2007 WL 4482607, at *3 (S.D. Fla. Dec. 19, 2007))). Because Defendants did not destroy evidence in bad faith, and because Plaintiff is not extremely prejudiced, the Court finds that Plaintiff is not entitled to spoliation sanctions.  For these reasons, Plaintiff's Motion to Strike Rockdale County's Answer [98] and Motion for Spoliation Sanctions Against CorrectHealth [175] are **DENIED**.

## II.     Plaintiff's Motion to Compel and Amended Motion to Compel[2]

Plaintiff moves to compel the production of certain documents pertaining to an internal affairs memorandum regarding Mr. Wilder's death addressed to Lieutenant James Cabe from Deputy Chief Richard S. Freeman.  Before Deputy Chief Freeman's September 29, 2014 deposition, the Rockdale County Defendants produced the newly discovered memorandum but did not produce documents prepared in response to the memorandum.  (<u>See</u> Mot. to Compel, Dkt. [180] at 2.)  Plaintiff argues that the memorandum and "supporting

---

[2]Plaintiff's first Motion to Compel [176] relies on an affidavit [177] referencing numerous exhibits that were not attached to the affidavit.  The Amended Motion to Compel [180] appears to be identical to the Motion to Compel [176] in content, except that Plaintiff includes the exhibits missing from the supporting affidavit [177].

documents contained critical, comprehensive information relating to the County's investigation of this case." (Id. at 2-3.)  The parties agreed to postpone the deposition of Deputy Chief Freeman until the documents responsive to the memorandum were produced.

Plaintiff has made numerous requests for the supporting documents referenced in the internal affairs memorandum, but Defendants state that they cannot locate them.  Defendants further point out that Investigator Kurt Hall prepared a written response to the memorandum and relied on existing documentary information.  (Defs.' Resp., Dkt. [187] at 3.)  Defendants contend that many of the answers to the memorandum's questions have been revealed in discovery.  In any event, Rockdale County officials have searched for more memorandum-related documents, but they have not been able to locate anything new.

After reviewing the record, the Court finds that Defendants have diligently searched for the documents related to the memorandum.  Apparently, Defendants do not have these documents, and there is no evidence of bad faith or spoliation of evidence.  Because Defendants are only required to produce what they have, the Court cannot compel Defendants to produce these

documents.  See FED. R. CIV. P. 34(a) (requiring production of documents that are "in the responding party's possession, custody, or control").  Therefore, Plaintiff's Plaintiff's Motion to Compel [176] and Plaintiff's Amended Motion to Compel [180] are **DENIED**.  The Court awards no attorney's fees.

## III.   Summary Judgment Legal Standard

The Court next considers the CorrectHealth Defendants' Motion for Partial Summary Judgment [142].  Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative

evidence to show that a genuine issue of material fact does exist.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

14

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

**IV.    Analysis**

The CorrectHealth Defendants argue that they are not liable under § 1983

because they are not state actors, and even if they were, Defendants argue that

they are entitled to qualified immunity because they did not violate clearly

established federal law.

A.    Whether CorrectHealth Acted under Color of State Law

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must

make a prima facie showing of two elements: (1) that the act or omission

deprived plaintiff of a right, privilege or immunity secured by the Constitution

or laws of the United States, and (2) that the act or omission was done by a

person acting under color of law.' " Marshall Cnty. Bd. of Educ. v. Marshall

Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).

Defendants assert that they did not act under color of state law for

purposes of § 1983 because they are private, for-profit healthcare providers

with limited governmental supervision.  The Supreme Court has addressed

whether private healthcare providers in prisons act under color of state law.  In

West v. Atkins, 487 U.S. 42, 44 (1988), a prisoner sued a private physician who

provided orthopedic services to inmates under a contract with the state prison.

To act under color of state law, a defendant must have exercised power

"possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law."  United States v. Classic,

313 U.S. 299, 326 (1941).  The Court explained that "if a defendant's conduct

satisfies the state-action requirement of the Fourteenth Amendment, 'that

conduct [is] also action under color of state law and will support a suit under §

1983.' "  West, 487 U.S. at 49 (quoting Lugar v. Edmondson Oil Co., 457 U.S.

922, 935 (1982)).  If that is the case, "the defendant's alleged infringement of

16

the plaintiff's federal rights is 'fairly attributable to the State.' " Id. (quoting

Lugar, 457 U.S. at 937).

The Court went on to hold that when a physician is employed by a state

to provide medical services to inmates, "[s]uch conduct is fairly attributable to

the State." Id. at 54.  Because an inmate must rely on his jailers to treat his

medical needs, "the State has a constitutional obligation, under the Eighth

Amendment, to provide adequate medical care to those whom it has

incarcerated." Id. (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Therefore, when a state employs a physician, the doctor is authorized and

obligated to treat prison inmates, and "may fairly be said to be a state actor."

See id. at 55 (internal quotation mark omitted) (quoting Lugar, 457 U.S. at

937).

Defendants here were similarly employed by Rockdale County to provide

medical care at the jail.  See also O.C.G.A. § 42-4-4 (stating that it is the duty of

the sheriff to provide prisoners "with medical aid").  As a result, they assumed

the state's obligation to treat prison inmates.  Therefore, their conduct is fairly

attributable to the state, and Defendants acted under color of law within the

meaning of § 1983.

17

Nevertheless, Defendants argue that they did not act under color of state law, primarily relying on Richardson v. McKnight, 521 U.S. 399 (1997), and Hogan v. WellStar Health Network, Inc., No. 1:12-CV-1418-RWS, 2013 WL 1136980 (N.D. Ga. Mar. 14, 2013).  In Richardson, the Supreme Court considered whether two employees of a private prison-management firm could assert qualified immunity from suit under § 1983.  521 U.S. at 404.  That inquiry is different from whether an individual acts under color of state law within the meaning of § 1983 in the first place.  See id. at 412 (stating that private actors are not always entitled to raise the defense of qualified immunity because "§ 1983 immunity does not automatically follow § 1983 liability").  In other words, a private defendant could be sued under § 1983 because it acted under color of state law and yet not be entitled to qualified immunity if the traditional policy reasons for immunity do not justify extending that defendant such protection from suit.

In that regard, the Supreme Court analyzed whether providing private prison guards with qualified immunity would further the immunity doctrine's purpose of "protecting the public from unwarranted timidity on the part of public officials."  Id. at 408.  The Court held that it would not.  Id. at 412

18

("[W]e must conclude that private prison guards, unlike those who work directly for the government, do not enjoy immunity from suit in a § 1983 case.").

The Court clarified, however, that it "answered the immunity question narrowly, in the context in which it arose." Id. at 413.  The Court elaborated:

> That context is one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms.  The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision.

Id. at 413.

The Court placed significant weight on the fact that "marketplace pressures provide the private firm with strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or 'nonarduous' employee job performance." Id. at 411.  For that reason, immunity is not necessary like it is for government actors who are not subject to the same marketplace incentives. Instead, "government employees typically act within a *different* system" that "is often characterized by multidepartment civil service rules that, while providing

19

employee security, may limit the incentives or the ability of individual

departments or supervisors flexibly to reward, or to punish, individual

employees." Id. at 410-11.  Therefore, immunity "encourage[s] vigorous

performance" of government employees, just as marketplace pressures do for

private actors.  See id.

      The Court offered another caveat: "[W]e have focused only on questions

of § 1983 immunity and have not addressed whether the defendants are liable

under § 1983 even though they are employed by a private firm." Id.  Because

the court of appeals had not decided that question, the Supreme Court noted it

was best for the district court to resolve whether the "defendants actually acted

'under color of state law.' " Id.

      Defendants here focus on the above language explaining that a for-profit

firm assuming a major task in competition with other private firms is not

entitled to a qualified immunity defense.  Defendants use this language to argue

that they do not come under the scope of § 1983 as state actors at all.  But the

Supreme Court in Richardson decided whether granting private guards

immunity comported with the purposes of immunity, not whether those guards

acted under color of state law.  Richardson never discussed whether the private

AO 72A
(Rev.8/82)

prison guards' actions were fairly attributable to the state—the key inquiry in the state-actor analysis.  See <u>Lugar</u>, 457 U.S. at 937.  <u>Richardson</u> does not support Defendants' case.

Defendants also cite to this Court's reliance on <u>Richardson</u> in <u>Hogan v. WellStar</u>, a case also involving a § 1983 suit against a private healthcare provider—WellStar—at a jail.  In <u>Hogan,</u> the Court found that WellStar was similar to the private firm in <u>Richardson</u> because it was subject to the same market pressures.  See <u>Hogan</u>, 2013 WL 1136980, at *10-11.  The Court stated, "if Defendants were not acting under color of state law for qualified immunity purposes, they were not acting under color of state law for purposes of § 1983 liability," and concluded that WellStar did not act under color of state law.  <u>Id.</u> at *11.  But in that case, the plaintiff had taken the position at oral argument that WellStar was not a state actor.  So, <u>Hogan</u> did not clearly delineate the state-actor analysis and the qualified-immunity analysis, and at any rate the Court is not bound by <u>Hogan</u>.

At oral argument, CorrectHealth argued that subjecting it to suit under § 1983 without permitting it to assert qualified immunity would be an unfair result, and therefore using the <u>Richardson</u> analysis to determine whether an

AO 72A
(Rev.8/82)

entity is subject to suit under § 1983 would create a clearer standard.  However,

existing precedent compels the Court to find that the state-actor and qualified-

immunity inquiries are different.  The factors discussed in <u>Richardson</u> do not

control whether a defendant acts under color of law for § 1983 purposes.  As a

result, the Court relies on <u>West v. Atkins</u> and finds that CorrectHealth acted

under color of law and is subject to § 1983.

> <u>B.</u>    <u>Qualified Immunity</u>

Defendants next argue that even if they acted under color of state law,

they are entitled to qualified immunity because they did not violate Mr.

Wilder's clearly established constitutional rights.  The doctrine of qualified

immunity protects government officials performing discretionary functions

from being sued in their individual capacities.  <u>Wilson v. Layne</u>, 526 U.S. 603,

609 (1999).  Officials are shielded "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable

person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Defendants fail to show that qualified immunity is available to them.  As

explained above, the purposes of the immunity doctrine do not justify extending

immunity to a private, for-profit firm providing medical care potentially in

22

competition with other firms.  Like in <u>Richardson</u>, Defendants here operate

subject to "marketplace pressures" that encourage them "to avoid overly timid,

insufficiently vigorous, unduly fearful, or 'nonarduous' employee job

performance."  521 U.S. at 410.  In fact, Defendants emphasize (albeit in an

attempt to show that they are not state actors under § 1983) that they are similar

to the defendants in <u>Richardson</u>, (Defs.' Br., Dkt. [142-1] at 5) and the Court

agrees.  Consequently, Defendants fail to show that they are entitled to qualified

immunity, and the CorrectHealth Defendants' Motion for Partial Summary

Judgment [142] is **DENIED**.

### Conclusion

For the foregoing reasons, Plaintiff's Motion to Strike Rockdale County's

Answer [98], the CorrectHealth Defendants' Motion for Partial Summary

Judgment [142], Plaintiff's Motion for Sanctions Against CorrectHealth [175],

Plaintiff's Motion to Compel [176], and Plaintiff's Amended Motion to Compel

[180] are all **DENIED**.

**SO ORDERED**, this  15th  day of April, 2015.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

23